# BORRELLI & ASSOCIATES
## P.L.L.C.
www.employmentlawyernewyork.com

| 655 Third Avenue | 910 Franklin Avenue |
| Suite 1821 | Suite 200 |
| New York, NY 10017 | Garden City, NY 11530 |
| Tel. No. 212.679.5000 | Tel. No. 516.248.5550 |
| Fax No. 212.679.5005 | Fax No. 516.248.6027 |

June 7, 2019

<u>Via ECF</u>
The Honorable Andrew L. Carter
United States District Judge for the
Southern District of New York
40 Foley Square
New York, New York 10007

   Re: *Rodriguez et. al. v. 149 Street Food Corp., et al.*
      Case No.: 18-CV-7933(ALC)(OTW)

Dear Judge Carter:

  This firm represents the named-Plaintiff Anthony Rodriguez, and the opt-in Plaintiff Ramon Calderon, (together, where appropriate, as "Plaintiffs"), in the above-referenced wage and hour action brought under, *inter alia*, the Fair Labor Standards Act ("FLSA"), against their alleged former employers, 149 Street Food Corp. d/b/a Fine Fare Supermarket, 675 Morris Ave Food Corp. also d/b/a Fine Fare Supermarket, Frank Pimentel, individually, Daisy Pimentel, individually, and Rigo Delgado, individually, (collectively as "Defendants," and together, with Plaintiffs, as "the Parties").[1] We submit this letter, on behalf of the Parties, to respectfully request that the Court review and approve the Parties' settlement of Plaintiffs' claims brought pursuant to the FLSA as fair and reasonable in accordance with *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015). A copy of the Parties' fully-executed settlement agreement is attached hereto

---

[1] Plaintiffs styled this case as a collective action pursuant to 29 U.S.C. § 216(b) and as a class action pursuant to Federal Rule of Civil Procedure 23, but are foregoing pursuit of a collective or class to resolve their individual claims.

1

as **Exhibit A**.[2]

I.     **PRELIMINARY STATEMENT**

On August 30, 2018, Rodriguez filed a Complaint and his opt-in form in this court against Defendants - - two corporations that he claims operate as a single enterprise to run two Bronx supermarkets that do business under the same name, and the corporations' alleged owners and day-to-day mangers - - alleging that, *inter alia*, they failed to pay him overtime compensation pursuant to, *inter alia*, the FLSA. *See* Dkt. No. 1.  Specifically, in his Complaint, Rodriguez alleged that he worked for Defendants as a deli worker and cook from on or about July 15, 2016 until May 15, 2018.  Rodriguez further alleged that he routinely worked over forty hours each week, but Defendants failed to compensate him at the statutorily-applicable overtime rate for the hours that he worked each week exceeding forty, and instead paid him only at his regular rate of pay for all hours worked.  On November 5, 2018, Plaintiff Calderon filed his opt-in form, thereby joining the FLSA collective. Dkt. No. 14.

Defense counsel filed a Notice of Appearance of November 13, 2018. Dkt. No. 17. On November 16, 2018, the Court entered a Mediation Referral Order, directing the parties to participate in mediation. *See* Dkt. 20 No. 20.  Defendants filed an Answer on November 29, 2018, denying all of Plaintiffs' material allegations. *See* Dkt. No. 21.  On January 30, 2019, Plaintiffs filed a motion seeking leave to move to conditionally certify a §216(b) collective and to amend the complaint to include additional claims, and to stay mediation until that motion was decided (the "Letter Motion"). Dkt. No. 22.  On January 31, 2019, this Court referred this matter to Magistrate Judge Ona T. Wang for general pretrial purposes. Dkt. No. 23.  On February 6, 2019, this Court denied, without prejudice, Plaintiffs' motion to stay mediation and referred the remaining issues addressed in the Letter Motion to Judge Wang. Dkt. No. 24.  On March 5, 2019, Defendants submitted their opposition to Plaintiffs' Letter Motion (the "Opposition"). Dkt. No. 27.  On March 6, 2019, the parties had an initial conference before Judge Wang, during which the court denied Plaintiffs' renewed motion to stay mediation, and reserved decision on the motions for conditional certification and to amend the Complaint pending the outcome of the mediation. Dkt. No. 28.  Prior to participating in mediation, the Parties exchanged substantial documents in aid of settlement, including wage statements, work schedules, time-keeping records, W-2s, and damages calculations in accordance with the requirements of the Mediation Referral Order.

---

[2] Plaintiffs also bring claims for Defendants' alleged violations of the New York Labor Law, which although resolved in the Parties' settlement agreement, do not require court approval for dismissal. *E.g. Simono v. Gemco Realty II, LLC*, No. 16-cv-5385-AJN, Dkt. No. 32 (S.D.N.Y. Oct. 23, 2017) (citing *Abrar v. 7-Eleven*, 2016 WL 1465360 (E.D.N.Y. Apr. 14, 2016)).

On March 15, 2019, the Parties participated in mediation with a member of the Southern District's panel, Michael Blechman, Esq. Crucially, the Parties' negotiation was substantially based on Defendants' time-keeping records. Ultimately, with the assistance of the mediator, the Parties reached an agreement to settle the case in principle for a total of $58,189.00, resolving all claims that both Plaintiffs brought in this action. Of this amount, Rodriguez is to receive $19,038.26 while Calderon is to receive $19,038.26. The Parties subsequently worked to finalize the settlement agreement that they submit with this motion as **Exhibit A**.

Additionally, as detailed below, Plaintiffs' counsel respectfully submits an application for $19,038.26, or one-third of the net settlement amount, in attorneys' fees, plus $1,074.22 as reimbursement for counsel's litigation expenses, for a total of $20,112.48. According to the terms of the agreement, Defendants will distribute the settlement payments no later than thirty days from the date on which the Court approves this settlement and dismisses this action.

Additionally, the agreement states that if Defendants do not pay by the payment deadline, after giving notice and an opportunity to cure, the parties shall notify the court and the case shall continue as if no settlement was reached. As described below, the Parties submit that the settlement agreement represents a fair and reasonable resolution of Plaintiffs' FLSA claims asserted in the matter. Thus, the Parties respectfully request that the Court approve their settlement agreement and dismiss this action with prejudice.

**II.     THE AGREEMENT IS FAIR AND REASONABLE**

FLSA claims may only be settled and dismissed with prejudice under Rule 41 if they are approved by the Court. *Cheeks*, 796 F.3d at 206-07. Courts routinely hold that "[i]f the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement." *Sierra v. Spring Scaffolding LLC*, 2015 WL 10912856, at *1 (E.D.N.Y. Sept. 30, 2015) (citation omitted); *see Velasquez v. SAFI-G, Inc.*, 137 F. Supp. 3d 582, 585 (S.D.N.Y. 2015) (approving FLSA settlement where the agreement "reflect[ed] a reasonable compromise over contested issues") (internal quotations omitted). "Generally, there is a strong presumption in favor of finding a settlement fair, because the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement." *Qi Jun Kang v. Jia Xing 39th Inc.*, 2018 WL 4538906, at *1 (S.D.N.Y. Sept. 21, 2018) (citing *Lliguichuzhca v. Cinema 60, LLC*, 948 F. Supp. 2d 362, 365 (S.D.N.Y. 2013)). "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement, and approve FLSA settlements when they are reached as a result of contested litigation to

resolve *bona fide* disputes." *Abrar v. 7-Eleven, Inc.*, 2016 WL 1465360, at *2 (E.D.N.Y. Apr. 14, 2016) (citation omitted).

Importantly, "[t]he force of this presumption is increased when a settlement is reached with the assistance of an experienced mediator." *Saldana v. Middletown Car-G-Cam Uni Corp.*, 2015 WL 12591678, at *1 (S.D.N.Y. Sept. 23, 2015) (citing *Sukhnandan v. Royal Health Care of Long Island LLC*, 2013 WL 4734818, at *2 (S.D.N.Y. Sept. 3, 2012)); *see also In re Penthouse Executive Club Comp. Litig.*, 2013 WL 1828598, at *2 (S.D.N.Y. Apr. 30, 2013) ("A settlement . . . reached with the help of third-party neutrals enjoys a presumption that the settlement achieved meets the requirements of due process."); *Toure v. Amerigroup Corp.*, 2012 WL 1432302, at *1 (E.D.N.Y. Apr. 20, 2012) ("The assistance of an experienced mediator . . . reinforces that the Settlement Agreement is non-collusive."); *Westerfield v. Washington Mut. Bank*, 2009 WL 6490084, at *1 (E.D.N.Y. June 26, 2009) (same).

In evaluating a proposed settlement of FLSA claims, most courts in this Circuit apply the five-factor test articulated in *Wolinsky v. Scholastic, Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012). *See Zorrilla v. Carlson Restaurants Inc.*, 2017 WL 5004848, at *1 (S.D.N.Y. Oct. 26, 2017) (Torres, *J.*) (applying *Wolinsky* factors). The *Wolinsky* factors consider: (1) the plaintiffs' range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion. *Id*. (citing *Wolinsky*, 900 F. Supp. 2d at 335).

A.   *Range of Possible Recovery*

In this case, Rodriguez claims that he worked for Defendants as a deli worker and cook from on or about July 15, 2016 until May 15, 2018. Because Rodriguez filed and joined this case on August 30, 2018, the maximum FLSA period, assuming that Plaintiffs could establish willfulness, begins on August 30, 2015, meaning that his entire period of employment would be covered. *See* 29 U.S.C. § 255(a). Throughout his employment, Rodriguez alleges that he worked six days per week, on Monday through Thursday and Saturday from 12:00 p.m. until 9:00 p.m., and on Sunday from 12:00 p.m. until 8:00 p.m. Rodriguez further alleges that in 2016 and 2017 he received one thirty-minute break each day, and in 2018 he received a one-hour break. Thus, Rodriguez claims that he typically worked a total of fifty hours each week worked during 2016 and 2017 and forty-seven hours each week during 2018.

Opt-in Plaintiff Calderon claims that he worked for Defendants as a deli worker from on or about July 1, 2017 until April 2018. Because Calderon opted-in to this case on November 5, 2018, his entire period of employment with Defendants is within the FLSA period without the need to prove willfulness. *See* 29 U.S.C. § 255(a). Throughout his employment, Calderon alleges that he worked six days per week, typically Monday through Saturday, from 8:00 a.m. until 9:00 p.m. each day. Calderon further alleges that in 2017 he received one thirty-minute break each day, and that in 2018 he received a one-hour break each day, and thus he typically worked a total of seventy-five hours each week of his employment during 2017, seventy-two hours each week of his employment during 2018.

From July 15, 2016 up until December 30, 2016, Rodriguez claims that Defendants compensated him at $10.00 per hour for all hours worked. Then, from December 31, 2016 until December 30, 2017, Plaintiffs claim that Defendants compensated them at $11.00 per hour for all hours that they worked during that time. Lastly, from December 31, 2017 until May 15, 2018, Plaintiffs claim that Defendants compensated them at $13.00 per hour for all hours worked during that time. Because Plaintiffs claim that Defendants paid them at these respective rates for all hours that they worked, including those hours worked beyond forty each week, Plaintiffs allege that Defendants shorted them their half-time premium for all hours worked over forty per week.

Defendants vigorously dispute Plaintiffs' allegations. Specifically, they dispute the hours that Plaintiffs claim to have worked, maintain that they paid Plaintiffs properly for all hours worked, and contend that they acted based on a good-faith and reasonable belief that they had properly paid Plaintiff.

Based upon Rodriguez's recollection of his dates of employment and hours worked, his maximum recovery for his FLSA claim is $4,937.50 in actual damages, plus $4,937.50 in liquidated damages, for a total of $9,875.00. Additionally, based upon the time records that Defendants provided, which closely align with Rodriguez's estimates, Rodriguez's maximum recovery for his FLSA claim is $3,787.94 in actual damages, plus $3,787.94 in liquidated damages, for a total of $7,575.88. Under the agreed-upon settlement, after deducting attorneys' fees and costs, Rodriguez will receive $19,038.26, which equates to a recovery percentage of 192.79% of his *maximum* FLSA damages, inclusive of liquidated damages.

Based upon Calderon's recollection of his dates of employment and hours worked, his maximum recovery for his FLSA claim is $8,125.00 in actual damages, plus $8,125.00 in liquidated damages, for a total of $16,250.00. However, based upon the time records that Defendants provided, which differ significantly from Calderon's recollection, Calderon's maximum recovery for his FLSA claim is $1,459.89 in actual damages, plus

$1,459.89 in liquidated damages, for a total of $2,919.78.  Nonetheless, under the agreed-upon settlement, after deducting attorneys' fees and costs, Calderon will receive $19,038.26, which equates to a recovery percentage of 117.16% of his *maximum* FLSA damages, inclusive of liquidated damages.[3]

Clearly, due to the calculation of Plaintiffs' FLSA damages, the Parties' settlement is undoubtedly both fair and reasonable. *See Castillo*, 2018 WL 7681356, at *2 (finding that plaintiff's recovery is reasonable where it is more than fifty percent of what plaintiff alleged he was owed).  This is especially true because "FLSA claims have a two-year statute of limitations, unless the violation was willful, which extends the limitations period to three years." *Garcia v. Bad Horse Pizza, Inc.*, 2017 WL 192955, at *2 (S.D.N.Y. Jan. 18, 2017) (citing 29 U.S.C. § 255(a)).  Additionally, "if the employer shows to the satisfaction of the Court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the FLSA, the court may, in its sound discretion, award no liquidated damages." *See id*. at *3-4 (finding that plaintiff failed to demonstrate that defendant willfully violated the FLSA, but defendant failed to produce any evidence that it took steps to learn the requirements of the FLSA and comply with them).  Thus, if Rodriguez were unable to establish willfulness, or if the Defendants produced evidence of good faith, Plaintiffs' FLSA recovery could be significantly less than what they are receiving as a result of this settlement.  Therefore, the result ultimately achieved for Plaintiffs not only represents a fair and reasonable recovery in light of their best FLSA result, it is also potentially better than Plaintiffs would receive even on their best day at trial.  This factor overwhelmingly favors approval.

### B.  *Avoidance of Burdens and Expenses*

Second, settling at this stage obviously allows the Parties to avoid substantial costs and delays.  Indeed, were a settlement not reached at this stage, the Parties would then have been obligated to exchange formal document discovery and interrogatory responses, conduct depositions of all parties and pertinent non-parties, and most likely engage in motion practice.  The Parties would then likely proceed to a trial in this matter, followed by post-trial motions and a potential appeal, resulting in a delayed resolution of Plaintiffs' claims at potentially great expense.  At this point in the action, there have not been substantial out-of-pocket litigation expenses incurred, but post-depositions, the costs would naturally balloon.  This settlement eliminates all of those costs and delays and this clearly weighs in favor of approval.

---

[3] Plaintiffs' will receive the aforementioned settlement amounts based upon a pro-rata share of the total damages when taking into account all claims that were asserted in the case.

### C.     Litigation Risks

Third, of course, all parties face the risk of losing at trial, either in whole or in part. Here, even if Plaintiffs were to succeed on liability, there are three risks that could serve to either minimize or eliminate their recovery: (1) failure to prove that Plaintiffs worked the hours that they alleged; (2) failure to prove willful violations of the FLSA with respect to Rodriguez; and (3) Defendants reasonably could show that they made a good faith effort to comply with the statute. Considering these attendant risks, the settlement amount here heavily weighs in favor of a fair and reasonable result that warrants this Court's approval.

### D.  Arms-Length Bargaining, No Fraud or Collusion, No Cheeks Admonitions

As detailed herein, this settlement was reached before expending otherwise-inevitable resources on document production, depositions, and before any motion practice. Both sides realized that continued litigation would not be in the best interests of any party involved, and as a result of that recognition, during the negotiations both sides worked hard to come to a fair and reasonable compromise, with much-needed assistance from a Court-directed mediation. Indeed, the fact that the Parties' settlement was reached with the guidance of a member of this District's mediation panel strongly indicates a fair and reasonable settlement. *See Siddiky v. Union Square Hospitality Grp. LLC*, 2017 WL 2198158, at *4 (S.D.N.Y. May 17, 2017) (citing *Romero v. La Revise Assocs. L.L.C.*, 58 F. Supp. 3d 411, 420 (S.D.N.Y. 2014)) (applying presumption of procedural fairness where negotiations took place with experienced mediator). Accordingly, the settlement achieved clearly reflects an arm's-length negotiation absent from fraud or collusion and a reasonable compromise over the contested issues at stake in the matter.

Moreover, the settlement agreement does not contain any terms that would militate against the Court approving it. For instance, Plaintiffs' release in paragraph 1 of the Settlement Agreement is limited solely to any wage and hour claims that Plaintiffs have or may have against Defendants, and does not fall into the category of releases that are so broad and encompassing so as to be rejected because they run afoul of standards of fairness and reasonableness. *See Flood v. Carlson Restaurants Inc.*, 2015 WL 4111668, at *2 (S.D.N.Y. July 6, 2015); *Lopez v. Nights of Cabiria, LLC*, 2015 WL 1455689, at *6-7 (S.D.N.Y. March 30, 2015). To the contrary, this release is narrowly tailored to release only claims relevant to the instant action. Likewise, the agreement does not contain either a confidentiality clause that unduly restricts Plaintiffs' ability to discuss the settlement, or a non-disparagement clause that may "run afoul of the purposes of the FLSA and the public's independent interest in assuring that employees' wages are fair." *Flood*, 2015 WL 4111668, at *1 (citing *Lopez,* 2015 WL 1455689, at *5); *Cionca v. Interactive Realty, LLC*, 2016 WL 3440554, at *3 (S.D.N.Y. Jun. 10, 2016).

Considering the risks and potential costs and resources that would be expended in further litigation in this case, including as outlined above, Plaintiffs maintain that this settlement is an excellent result for them, and request that the Court approve it as fair and reasonable. Moreover, the Parties' proposed order, submitted with the present motion as **Exhibit B**, requests that the Court retain jurisdiction over this matter for the sole purpose of enforcing the terms of the settlement agreement. Should the Court decline to endorse that Order, the Parties respectfully request that any such Order include that provision.

### III.     Attorneys' Fees and Costs are also Reasonable

In addition to assessing the reasonableness of the settlement award, most courts since *Cheeks* have found that courts "must also assess the reasonableness of any attorneys' fee award." *Thallapaka v. Sheridan Hotel Assocs. LLC*, 2015 WL 5148867, at *2 (S.D.N.Y. Aug. 17, 2015) (citing *Wolinsky*, 900 F. Supp. 2d at 336). Attorneys' fees in FLSA settlements are examined, when examined, "to ensure that the interest of plaintiffs' counsel in counsel's own compensation [did not] adversely affect the extent of the relief counsel [procured] for the clients." *Lliguichuzhca v. Cinema 60, LLC*, 948 F. Supp. 2d 362, 366 (S.D.N.Y. 2013) (citing *Wolinsky*, 900 F. Supp. 2d at 336).

Here, Plaintiffs' counsel requests that the Court approve fees of one-third of the net settlement total, plus expenses, which is "consistent with the norms . . . in this circuit." *Tiro v. Public House Investments, LLC*, 2013 WL 4830949, at *14 (S.D.N.Y. Sept. 10, 2013) (collecting cases). Courts in this Circuit routinely approve attorneys' fee awards at a rate of one-third of the net settlement in common fund cases. *See Fresno County Employees' Retirement Assoc. v. Isaacson/Weaver Family Trust*, 2019 WL 2219680, at *5 (2d Cir. May 23, 2019) (quoting *McDaniel v. Cty. of Schenectady*, 595 F.3d 411, 419 (2d Cir. 2010)) (stating that "we have previously noted that 'the percentage method has the advantage of aligning the interests of plaintiffs and their attorneys more fully'"); *see also McGreevy v. Life Alert Emergency Response, Inc.*, 258 F. Supp. 3d 380, 384 (S.D.N.Y. 2017) ("The percentage of the fund method is the trend in this Circuit") (citing *McDaniel*, 595 F.3d at 417-19; *Najera v. Royal Bedding Co., LLC*, 2015 WL 3540719, at *3 (E.D.N.Y. June 3, 2015) (one-third contingency fees "are commonly accepted in the Second Circuit in FLSA cases") (collecting cases); *Calle v. Elite Specialty Coatings Plus, Inc.*, 2014 WL 6621081, at *3 (E.D.N.Y. Nov. 21, 2014) (same); *Rangel v. 639 Grand St. Meat & Produce Corp.*, 2013 WL 5308277, at *1 (E.D.N.Y. Sept. 19, 2013) (observing that in FLSA cases, district courts in the Second Circuit routinely approve of fees that amount to one-third of the total recovery). Thus, a one-third recovery is appropriate in a case where, as here, Plaintiffs' counsel's fee entitlement is entirely contingent upon success of a settlement or award. *See Massiah v. MetroPlus Health Plan, Inc.*, 2012 WL 5874655, at *8 (S.D.N.Y. Nov. 20, 2012) (collecting cases) (one-third recovery is "presumptively reasonable" where

"Counsel's fee entitlement is entirely contingent upon success"). Plaintiffs' counsel's requested fee of $19,038.26, or one-third of the net settlement here, is entirely reasonable.

Moreover, the reasonableness of these fees is further solidified by applying the lodestar method as a cross check to ensure that counsel's fee award is not excessive in relation to the amount of work actually performed. *See Fresno County Employees' Retirement Assoc.*, 2019 WL 2219680, at *6 (citing *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 50 (2d Cir. 2000)) ("district courts should use the lodestar as a 'baseline' against which to cross-check a percentage fee"); *see also Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 121 (2d Cir. 2005); *Sakiko Fujiwara v. Sushi Yasuda Ltd.*, 58 F. Supp. 3d 424, 435 (S.D.N.Y. 2014). Indeed, "a multiplier near 2 should, in most cases, be sufficient compensation for the risk associated with contingent fee FLSA cases." *Sakiko Fujiwara*, 58 F. Supp. 3d at 439. Additionally, the firm "risked time and effort and advanced costs and expenses, with no ultimate guarantee of compensation." *Kochilas*, 2015 WL 5821631, at *9; s*ee In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 164 (S.D.N.Y. 2011) (quoting *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 470 (2d Cir. 1974)) ("The most salient is the attorneys' risk in accepting a case on contingency fee, for the Second Circuit has noted 'no one expects a lawyer whose compensation is contingent upon his success to charge, when successful, as little as he would charge a client who in advance had agreed to pay for his services, regardless of success.'"); *Asare v. Change Group of New York*, 2013 WL 6144764, at *20 (S.D.N.Y. Nov. 18, 2013) (noting the importance of undertaking an FLSA action without assurance of payment for services where "lawyers are asked to be prepared to make this investment with the very real possibility of an unsuccessful outcome and no fee of any kind").

In order to calculate the lodestar cross check, Plaintiffs' counsel multiplied the attorney and paralegal hours spent on the case by the individuals' reasonable hourly rates. *See Healey v. Leavitt*, 485 F.3d 63, 71 (2d Cir. 2007). Here, if Plaintiffs' counsel were seeking fees pursuant to the lodestar, Michael J. Borrelli, the managing partner, would seek $400 per hour, Alexander T. Coleman, the Firm's litigating partner, would seek $350 per hour for his time, the Firm's senior associate, the undersigned, who handled the day-to-day tasks associated with this case and who possesses thirteen years of experience, would seek $295 per hour, and the Firm would seek reimbursement for its junior associates at a rate of $200 per hour, and its paralegals at the rate of $90 per hour. Courts within this Circuit and District, have routinely approved these rates. *See, e.g. Perez v. Merrick Deli & Grocery, Inc. et al.*, 13-cv-5166-ILG-JO, Dkt. No. 60 (E.D.N.Y. Apr. 4, 2019) (on a contested attorneys' fees motion filed after trial in a wage and hour case, awarding Borrelli & Associates, P.L.L.C. attorneys' fees at the rates that they request here, and recognizing that that "this Court and the neighboring Southern District of New York have routinely approved these billing rates for Borrelli & Associates"); *Vivaldo v. United Talmudical*

*Academy of Kiryas Joel, Inc.*, 14-cv-2636-GWG, Dkt. No. 128 (S.D.N.Y. Feb. 9, 2018) (approving rates of $400.00 per hour for Michael J. Borrelli, $350.00 per hour for Alexander T. Coleman, $295.00 per hour for senior associate Jeffrey R. Maguire, and $90.00 per hour for the Firm's paralegals); *Davis et al. v. Uptown Communications & Electric, Inc. et al.*, 16-cv-3990-LB, Dkt. No. 105 (E.D.N.Y. Nov. 15, 2017) (approving rates of $400.00 per hour for Michael J. Borrelli, $350.00 per hour for Alexander T. Coleman, $295.00 per hour for Jeffrey R. Maguire, and $90.00 per hour for the Firm's paralegals).

The Firm calculated its lodestar in this case to be $46,894.25 not inclusive of time spent on this letter. Thus, the Firm's requested fee of $19,038.26 is significantly less than the lodestar and does not require a multiplier. Plaintiffs' counsel's contemporaneous billing records are annexed hereto as **Exhibit C**.

Lastly, with respect to expenses, the Firm is seeking reimbursement for $1,074.22 in out-of-pocket expenses, comprised mainly of the filing fee, service on two corporate defendants and three individual defendants, and postage. Plaintiffs' counsel's expense statement is annexed hereto as **Exhibit D**.

## IV.    CONCLUSION

In light of the foregoing, the Parties respectfully request that the Court approve their FLSA settlement and dismiss this matter with prejudice, while retaining jurisdiction for the sole purpose of enforcing the Parties' agreement in the event of a breach in accordance with the agreement's terms. Again, there is a proposed order attached hereto as **Exhibit B** for the Court's convenience.

                          Respectfully submitted,

                          Thomas R. Price, Esq.
                          *For the Firm*

C:  All Counsel of Record *via* ECF